### ASA ELLWOOD et al., Appellants, *v.* ALBERT NORTHRUP, Respondent.

The requirements of the statute in reference to the sale of an infant's real estate must be strictly pursued in order to validate such a sale.

The burden is upon one claiming under a title, acquired at such a sale, to establish by affirmative evidence that every requirement necessary to give jurisdiction has been complied with; there is no presumption of compliance in the absence of proof.

In an action of ejectment defendants claimed title under a conveyance in proceedings under the Revised Statutes providing for the sale of real estate belonging to infants. (2 R. S. 194, § 167, *et seq.*) The only proof of compliance with the statute was of the presentation of a petition to the county judge for a sale and appointment of a special guardian, the appointment, the execution by the guardian of a bond and the approval thereof. No reference to a master or referee to inquire into the merits of the application as required (§ 175) was proved, or that the court was informed of the situation and value of the land, the reason for its sale, the name of the intended purchaser, the price to be paid or the manner of payment; nor was it shown that a sale was ordered or the contract of sale confirmed (§§ 177, 178). *Held*, that a valid sale was not established and the purchaser acquired no title under the conveyance.

Defendant also claimed, by adverse possession for more than twenty years, under a claim of title founded on a deed from W., executed in 1856. The premises were originally part of a farm purchased by L., but con-

veyed to W. in trust for the "sole use, benefit and behoof" of L. The latter died in 1846, leaving a will executed in 1839, by which he devised a portion of the farm to his daughter P., for life, remainder to her male heirs. By the will provision was made for payment of a mortgage on the farm by applying thereon moneys due the testator upon a larger mortgage held by him. W. was one of the executors of said will. A division of the farm was made, with the assent of W., among the devisees, and the premises in question were set off to P., who took possession and was in possession at the time of the execution of the deed by W. P., died in 1870. W. was held by the trial court to have been, at the time of the execution of his deed, a mortgagee in possession, upon evidence to the effect that there was found among his papers after his death the mortgage upon the farm with an indorsement thereon signed by B., the then holder, dated in 1843, acknowledging the receipt of one dollar in full discharge thereof, also an assignment of the mortgage from B. to W., dated in 1842, but acknowledged on the same day the discharge was executed. It did not appear that W., ever entered into possession of the property or claimed to hold it by virtue of the mortgage or by any other right or tenure. The mortgage referred to in the will as the source of payment of B.'s mortgage was satisfied of record, on the day after the date of the discharge. W., settled his accounts as executor without any claim of any indebtedness to him on account of payment of the mortgage. *Held*, that the decision of the trial court was error; that the grantee of W. took no interest under his deed, because it was void under the statute by reason of the adverse possession of P., at the time of its execution and because at that time W. had no possession of the premises or mortgage thereon.

(Argued May 10, 1887; decided June 7, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made April 21, 1885, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial without a jury.

The nature of the action and the material facts are stated in the opinion.

*Denis O'Brien* for plaintiffs. The deed from Watson to Walrath, construed in connection with the declaration of trust from Walrath to Leib, operated to vest the entire estate, both legal and equitable, in Leib. (*Rawson* v. *Lampman*, 5 N. Y. 456; *Treadwell* v. *Archer*, 76 id. 196; *Van Hagan* v. *Van*

*Rensselaer*, 18 Johns. 420; *Rogers* v. *Smith*, 47 N. Y. 324; *Dickson* v. *Rice*, 16 Hun, 422, 424; *Raubitschek* v. *Blank*, 80 N. Y. 478; *Rogers* v. *Kneeland*, 10 Wend. 219; *Hill* v. *Miller*, 3 Paige, 254; *Payne* v. *Jones*, 76 N. Y. 275, *Peyser* v. *McCormack*, 7 Hun, 300; 3 R. S. [7th ed.] 2326, §§ 6, 7; id. 2180, 2181, §§ 45–55; 2 id. [1st ed.] 134, 135, §§ 6, 7; *Cook* v. *Barr*, 44 N. Y. 156; *Duke of Cumberland* v. *Graves*, 9 Barb. 595; *Corse* v. *Leggett*, 25 Barb. 390; *Wright* v. *Douglass*, 7 N. Y. 564; *Vernon* v. *Vernon*, 53 id. 351; *Martin* v. *Funk*, 75 id. 134, 141; 1 id. [1st ed.] 727, 728, §§ 45, 55, 47, 49; 1 id. 729, § 60; 3 id. [7th ed.] 2182, §§ 59, 60; *Bennett* v. *Garlock*, 10 Hun, 328; *Foster* v. *Coe*, 4 Lans. 53; *Tobias* v. *Ketcham*, 32 N. Y. 319; *People* v. *Robinson*, 29 Barb. 77; *Duvall* v. *Eng. Church*, 53 N. Y. 500; *Marvin* v. *Smith*, 46 id. 471; *Galleo* v. *Eagle*, 1 T. & C. 124; *White* v. *Howard*, 52 Barb. 316; *Cooke* v. *Platt*, 98 N. Y. 35; *Selden* v. *Vermilyea*, 3 id. 526; 1 Barb. 58; *Adams* v. *Perry*, 43 id. 456, 487, 496; *Hagerty* v. *Hagerty*, 9 Hun, 175.) The trust attempted to be created was invalid and the absolute title was vested in Leib. (1 R. S. [1st ed.] 728, § 55; 3 id. [7th ed.] 2181, § 55; *Anderson* v. *Mather*, 44 N. Y. 258; *Hotchkiss* v. *Elting*, 36 Barb. 38; *Wright* v. *Douglass*, 7 N. Y. 564; *Cushney* v. *Henry*, 4 Paige, 345; *Bennett* v. *Garlock*, 10 Hun, 328, 338; *Fisher* v. *Hall*, 41 N. Y. 424; *Rawson* v. *Lampman*, 5 id. 456; 3 R. S. [7th ed.) 2188, § 74; 2181, § 49; *N. Y. Dry D. Co.* v. *Stillman*, 30 N. Y. 174, 191, 194; *Clark* v. *Crego*, 47 Barb. 599, 614; *Smith* v. *Bowen*, 35 N. Y. 83, 87; *Fellows* v. *Heermans*, 4 Lans. 231, 238; *Maurice* v. *Maurice*, 43 N. Y. 364; *White* v. *Howard*, 52 Barb. 316; Gerard's Titles, 277; Revisers' Notes, 3 R. S. [2d ed.] 583; *Siemon* v. *Schurck*, 29 N. Y. 598, 610, 611.) By the will of Leib an estate for life was devised to Peggy Ellwood, with remainder to the male heirs of her body. (*Crosby* v. *Wendell*, 6 Paige, 548; *Roseboom* v. *Roseboom*, 81 N. Y. 356, 357; *Southerland* v. *Gesner*, 27 Hun, 282; *Bliven* v. *Seymour*, 88 N. Y. 469; *Phillips* v. *Davies*, 92 id. 199; 3 R. S. [7th ed.] 2180, § 47; *Jennings* v. *Conboy*, 73 N. Y. 236, 237;

*Wright* v. *Douglass*, 7 id. 564; *In re Craig*, 1 Barb. 33; *Taggart* v. *Murray*, 53 N. Y. 233; *Van Nostrand* v. *Moore*, 52 id. 12; *Van Vechten* v. *Keator*, 63 id. 52; *Trustees of Kellogg*, 16 id. 84; *Sweet* v. *Chase*, 2 id. 73; *Everett* v. *Everett*, 29 id. 39, 83; *Clark* v. *Lupp*, 88 id. 228; 3 R. S. [7th ed.] 2175, 2176, §§ 7–13; 4 Kent's Com. 197, 202; 2 Wash. on Real Estate [4th ed.], 547; *Moore* v. *Littel*, 41 id. 66; *Livingston* v. *Green*, 52 id. 118, 119; *Chism* v. *Keith*, 1 Hun, 589; *Drake* v. *Lawrence*, 19 id. 112; *Sheridan* v. *House*, 4 Keyes, 569; *Bennett* v. *Garlock*, 10 Hun, 337–339; 3 R. S. [7th ed.], 2205, § 1; *Kelly* v. *Kelly*, 5 Lans. 443; *Guernsey* v. *Guernsey*, 36 N. Y. 267; *Taggart* v. *Murray*, 53 id. 233; *Terry* v. *Wiggins*, 47 id. 512; *Hagerty* v. *Hagerty*, 9 Hun, 175; *Post* v. *Hover*, 33 N. Y. 593; *Butler* v. *Butler*, 3 Barb. Ch. 305; *Mason* v. *Jones*, 2 Barb. 231; *Dubois* v. *Ray*, 35 N. Y. 162; *Smith* v. *Edward*, 88 id. 102; *Adams* v. *Perry*, 43 id. 487, 488; *Heermans* v. *Robertson*, 64 id. 332; *Van Schuyver* v. *Mulford*, 59 id. 426; *Harrison* v. *Harrison*, 36 id. 543; *Schettler* v. *Smith*, 41 id. 328; *Post* v. *Hover*, 33 id. 593; 30 Barb. 313; *Parks* v. *Parks*, 9 Paige, 108; *Haxtun* v. *Corse*, 2 Barb. Ch. 507; *Van Vechten* v. *Van Vechten*, 8 Paige, 105; *Vail* v. *Vail*, 7 Barb. 227; *James* v. *Beasley*, 14 Hun, 521; *De Kay* v. *Irving*, 5 Denio, 646; *Hawley* v. *James*, 16 Wend. 60; *Lang* v. *Ropke*, 5 Sand. 363; *Martin* v. *Martin*, 15 Week. Dig. 233; 3 R. S. [7th ed.], 2180, §§ 47, 49; *Selden* v. *Vermilyea*, 3 N. Y. 526; *Fisher* v. *Hall*, 41 id. 417; 3 R. S. [7th ed.], 2177, § 28; *Moore* v. *Littel*, 41 N. Y. 66; *Barber* v. *Cary*, 11 id. 401.) The jurisdiction to sell infants' estates is a special statutory one, and can only be exercised in the manner directed by the statute. Every requisite of the statute must be complied with or no title will pass. (*Battell* v. *Torrey*, 65 N.Y. 294; *Stillwell* v. *Swartout*, 81 id. 109; *In re Valentine*, 72 id. 184; *Howell* v. *Mills*, 53 id. 322; *People* v. *Hulburt*, 46 id. 110; *Stiles* v. *Beeman*, 1 Lans. 90; 4 Wall. 435; 13 Wend. 465; 4 Hill, 76; 17 Barb. 202; 50 N. Y. 13; 34 Barb. 106; 4 N. Y. 257; 6 Hill, 415; 1 Edw. Ch. 507; 32 Barb. 49; 1 Hill, 130; 7 Hun, 557; 3 R. S.

[6th ed.] 201, § 118; Code Civ. Pro., § 2354; *Rea* v. *McEachron*, 13 Wend. 465.) In order to pass the infants' title, the deed must, on its face, purport to be the act and the deed of the infants by their guardian, and be executed in their names by him, or it must purport to be the deed of the special guardian and executed by him as such. (*Hyatt* v. *Seeley*, 11 N. Y. 52; *Cole* v. *Gromley*, 76 id. 527; *Briggs* v. *Partridge*, 64 id. 357; *Spencer* v. *Field*, 10 Wend. 88; *Townsend* v. *Orcutt*, 4 Hill, 351; *Stone* v. *Wood*, 7 Cow. 453; *Guyon* v. *Lewis*, 7 Wend. 26; *Sherman* v. *N. Y. C. R. R. Co.*, 22 Barb. 239; *Townsend* v. *Corning*, 23 Wend. 435; *In re Windle*, 2 Edw. Ch. 585; *Moss* v. *Livingston*, 4 N. Y. 208; *DeWitt* v. *Walton*, 9 id. 571; *Peck* v. *Gardner*, 9 Hun, 704; *Kierstead* v. *Orange & A. R. R. Co.*, 69 N. Y. 343; Laws of 1872; chap. 524, § 1.) As no order of confirmation was made, the infant's title did not pass. It is only when the sale has been confirmed by the court that the title of the infant is divested by the deed. (3 R. S. [6th ed.] 201, § 122; *Rea.* v. *McEachron*, 13 Wend. 465; *Atkins* v. *Kimran*, 20 id. 241, 249; *Terwilliger* v. *Brown*, 59 Barb. 9, 14; 44 N. Y. 237; *Rex* v. *Croke*, 1 Cowp. 26; *Jackson* v. *Shepard*, 7 Cow. 88; *Battell* v. *Torrey*, 65 N. Y. 294, 297; *Sharp* v. *Johnson*, 4 Hill, 92; *In re Valentine*, 72 N. Y. 184, 187; *Rogers* v. *Dill*, 6 Hill, 415; *Battell* v. *Burrill*, 50 N. Y. 13; *Onderdonk* v. *Mott*, 34 Barb. 106; *Newell* v. *Wheeler*, 48 N. Y. 486; *Hopkins* v. *Mason*, 61 Barb. 469; *Stiles* v. *Beeman*, 1 Lans. 90; *Baker* v. *Lorillard*, 4 N. Y. 257; *People* v. *Hulburt*, 46 id. 110, 113; *Guest* v. *City of B.*, 79 id. 624; *Roukendorf* v. *Taylor*, 4 Pet. 349; *Doughty* v. *Hope*, 3 Den. 595; *Thatcher* v. *Powell*, 6 Wheat. 119; *Jackson* v. *Estey*, 7 Wend. 148; *Bunner* v. *Eastman*, 50 Barb. 639; *Hilton* v. *Bender*, 69 N. Y. 76, 81, 83.) The recitation in the order appointing a special guardian, that it appeared there was a reasonable ground for the sale of the real estate, did not show that the matter, had been investigated by the court. (3 R. S. [6th ed.] 201, §§ 114, 119, 121; Code of Civ. Pro. § 2348.) All instruments and deeds

purporting to have been executed on behalf of infants, which do not take effect by delivery of their hands, are absolutely [void, because an infant cannot delegate a naked authority. (*Zouch* v. *Parsons*, 3 Burr. 1794; *Conroe* v. *Birdsal*, 1 Johns. Ch. 127; *Fonda* v. *Van Horn*, 15 Wend. 631; *Stafford* v. *Roof*, 9 Cow. 626; *Bool* v. *Mix*, 17 Wend. 119, 130, 131; *Ely* v. *Ehle*, 3 N. Y. 508; *Kain* v. *Postley*, 2 Edm. Sel. C. 132; *Gallatian* v. *Cunningham*, 8 Cow. 362; 2 Coke's Litt. Conf. Y. pl. 5; 5 Viner Abbr. 389, 390; Tit. Conf. Y. pl. 5; 7 Wait's Act. & Def. 137; *Willard* v. *Hewlett*, 19 Wend. 301; *Goodsell* v. *Myers*, 3 id. 480; *Walsh* v. *Powers*, 43 N. Y. 23; *Jackson* v. *Burchin*, 14 Johns. 124; *Voorhis* v. *Voorhis*, 24 Barb. 150; *Jackson* v. *Carpenter*, 11 Johns, 539; *Chapin* v. *Shafer*, 49 N. Y. 407; 3 id, 508; 3 R. S. [7th ed.] 2194 § 137; *Morss* v. *Vosburgh*, 57 Barb. 243.) The trial court was correct in its conclusions that the defendant was not entitled to protection as a *bona fide* purchaser without notice of plaintiff's claim. (3 R. S. [7th ed.] 2215, § 1; *Trustees* v. *Wheeler*, 61 N. Y. 89; *Depeyster* v. *Hildreth*, 2 Barb. Ch. 110; *Hooker* v. *Pierce*, 2 Hill, 650; *Ackerman* v. *Hunsicker*, 85 N. Y. 43; *Corse* v. *Leggett*, 25 Barb. 390; *Decker* v. *Boice*, 83 N. Y. 215; *Smyth* v. *Knick. Ins. Co.*, 84 id. 589; *Vorebeck* v. *Rue*, 50 Barb. 302; *Bacon* v. *Van Schoonhoven*, 87 N. Y. 446, *Acer* v. *Westcott*, 46 id. 384, 392; *Gilbert* v. *Peteler*, 38 id. 165; *Chautauqua Bk.* v. *Risley*, 4 Denio, 480; *Jackson* v. *Parkhurst*, 9 Wend. 209; *Jumel* v. *Jumel*, 7 Paige, 591, *Tuttle* v. *Jackson*, 6 Wend. 213; *Neesome* v. *Clarkson*, 1 Hare, 162, 163; *Brush* v. *Ware*, 15 Pet. 93; *McBurney* v. *Cutter*, 18 Barb. 203; *Cuyler* v. *Bradt*, 2 Caines, C. 326, *Briggs* v. *Palmer*, 20 Barb. 392; *Briggs* v. *Davis*, 20 N. Y. 15; 51 id. 646; *Demeyer* v. *Legg*, 18 Barb. 14.)

*John Lansing* for defendant. The proceedings for the sale of the infant's interest in the real estate were valid. (2 R. S. 194, 195, §§ 170, 171, 172, 174, 175, 177, 178; 3 R. S. [6th ed.] 201, §§ 114, 115, 116, 118, 119; Laws of 1814, chap. 108, § 1;

Laws of 1815, chap. 106, § 1 ; Chancery Rules, 1830, Nos. 158, 159, 160 ; *Cole* v. *Gourley,* 79 N. Y. 527–535 ; *In re Hazard,* 9 Paige, 365 ; *In re McIlvanis,* 15 Abb. 91 ; 2 R. S. 54, § 12 ; 3 R. S. [6th ed.] 55, § 13.) Walrath had a right to hold the title and retain possession until he was fully paid for all he had advanced. The deed was in fact a mortgage. (*Stoddard* v. *Whitney,* 46 N. Y. 627–632 ; *Carr* v. *Carr,* 52 id. 251–258 ; *Brumfield* v. *Boutall,* 24 Hun, 451 ; *Corse* v. *Leggett,* 25 Barb. 389.) By the payment and assignment of the Depau mortgage to Walrath while he was in possession of the premises he became a mortgagee in possession, and had the right to retain possession until he was paid his advances. (1 Jones on Mort. 715 ; *Hubbell* v. *Moulson,* 53 N. Y. 225 ; *Van Duyne* v. *Thayre,* 14 Wend. 233 ; *Chase* v. *Peck,* 21 N. Y. 586 ; *Kortright* v. *Cady,* id. 343–365 ; *Mad. Ave. B. Ch.* v. *Oliver St. B. Ch*, 73 id. 82–94 ; *Robinson* v. *Ryan,* 25 id. 320 ; *Ross* v. *Boardman,* 22 Hun, 527–530 ; *Beach* v. *Cook,* 28 N. Y. 508 ; *Griffin* v. *L. I. R. R. Co.,* 101 id. 348– 354.) The deed from Watson to Walrath in connection with the writing between Walrath and Lieb, did not vest the legal title to the land conveyed in Casper I. Lieb. (2 R. S. 134, § 6 ; 3 R. S. [6th ed.] 141, § 6 ; Laws of 1860, chap. 322 ; *Cook* v. *Barr,* 44 N. Y. 156–161 ; *Wright* v. *Douglass,* 7 id. 564–568 ; 1 Wood's Conveyancing, 630 ; *Yelverton Case,* 37 Eliz. B. R. 5, 6 ; 22 Viner, 216, 217 ; *N. Y. Dry Dock Co.* v. *Stillman,* 30 N. Y. 174–192.) The title to the land conveyed by Watson to Walrath passed by the deed absolutely to Walrath. Lieb had no legal title to the same. (1 R. S. 728, §§ 51, 52 ; 2 R. S. [6th ed.] 1105, §§ 51, 52 ; *Garfield* v. *Hatmaker,* 15 N. Y. 475 ; *Hurst* v. *Harper,* 14 Hun, 280 ; *Everett* v. *Everett,* 48 N. Y. 218 ; *Davis* v. *Graves,* 29 Barb. 480 ; *Woodhull* v. *Osborne,* 2 Edw. Ch. 614–619 ; *Reitz* v. *Reitz,* 80 N. Y. 538–542 ; *Siemon* v. *Schurck,* 29 id. 598–610 ; *Norton* v. *Stone,* 8 Paige, 222–225.) The conveyance to Walrath being absolute on its face, and the defendant having purchased the premises and actually paid the consideration money without notice of the rights of the plaint-

iffs or their ancestor, defendant's title is perfect. ( *Whitbeck* v. *Kane*, 1 Paige, 202–208; *Grimstone* v. *Carter*, 3 id. 421–438; *Mills* v. *Comstock*, 5 Johns. Ch. 214; *Tarball* v. *West*, 86 N. Y. 280; *Stoddard* v. *Rotton*, 5 Bosw. 378; 1 R. S. 730, § 64; 2 R. S. [6th ed.] 1110, § 64.)

RUGER, Ch. J. This was an action of ejectment to recover an undivided three-fifths part of a parcel of one hundred and thirty acres of land in Jefferson county, by the male heirs of one Peggy Ellwood.

The plaintiffs claim to have acquired title to such land under the will of their grandfather, Casper J. Lieb, who died in March 1846. By such will Lieb devised to his daughter, Peggy Ellwood, one hundred and thirty acres of land, being part of a farm of three hundred and twenty-five acres purchased by him of Eli Watson, the conveyance of which was made to Adam W. Walrath in "trust for my sole use, benefit and behoof." The demise was to said daughter "for and during her natural life, in trust for the male heirs of her body to have and to hold the same from and after the death of their said mother Peggy." The remainder of the farm was devised to his daughter Mary, wife of said Adam W. Walrath, substantially upon the same terms and conditions as attended the devise to Peggy. By the will which was originally executed in 1839, provision was made for the payment of a mortgage upon the farm for $1,500 held by one Depau, by applying thereon moneys due the testator from one Brown, upon a mortgage held by him against Brown, for a larger sum.

Adam W. Walrath was made one of the executors of the will and he, after the death of Lieb, entered upon the performance of his duties, and, so far as appears, fully administered the estate. Immediately upon the death of Lieb, the farm was surveyed and a division was made among the devisees, Mary with her husband continuing to occupy the part devised to her, which was previously occupied by her husband, and Peggy taking possession of the one hundred and thirty acres devised to her, and continuing to occupy

them until 1856. She died in 1870 and this action was commenced in 1881.

The defenses to the action as stated in the answer, were substantially as follows;

*First.* A denial of any knowledge or information sufficient to form a belief that plaintiffs, as tenants in common, were seized and possessed of an estate of inheritance in fee simple absolute of said premises.

*Second.* Certain proceedings taken in May, 1856, under the statute for the sale of infant's real estate, whereby the defendant claimed that his grantor acquired the title of the plaintiffs to the lands in dispute.

*Third.* That neither the plaintiffs or their ancestors were seized or possessed of the premises within twenty years before the commencement of the action.

*Fourth.* That the defendant and his grantors have been in adverse possession of the premises for a period exceeding twenty-five years under a claim of title founded upon a deed thereof dated April 11, 1856, from one Adam W. Walrath who was claimed to have held title thereto.

On the trial the defendants, among other conveyances, put in evidence a quit-claim deed of the premises, dated April 11, 1856, upon a consideration of one dollar, from Adam W. Walrath to one Wooliver, the defendants' remote grantor. The trial court found all of the issues of fact made by the pleadings for the plaintiffs, but also found that the defendant, under the deed from Adam W. Walrath, succeeded to all of his rights to such land, among which was the right of mortgagee in possession, as owner of the Depau mortgage. It refused to find, upon plaintiffs' request, that Walrath was not in possession of the premises in dispute at the date of his deed, to which refusal the plaintiffs excepted.

The uncontradicted evidence established the fact that Peggy Ellwood entered into possession of the 130 acres in 1846, under the devise from her father, and continued in such possession, with the knowledge and consent of Walrath, until 1856, and held such possession under a claim of title at the

date of Walrath's deed to Wooliver. (*Baker* v. *Lorillard*, 4 N. Y. 257.)

The entire evidence upon which Walrath was held to be a mortgagee in possession was admitted against plaintiffs objection, and consisted of the facts, that after his death, in 1881, his widow found among his papers the Depau mortgage, with an indorsement thereon reading as follows:

"Received, January 23, 1843, of Adam W. Walrath, one dollar in full discharge of the above and within mortgaged premises, which mortgage has been duly assigned to me.

"STEPHEN W. BROWN. [L. s.]"

This discharge was duly acknowledged on the same day by Brown before a Supreme Court commissioner. There was also found among the papers an assignment of the same mortgage from Brown to Walrath, dated May 10, 1842. This assignment was also acknowledged by Brown on the same day he executed the discharge of the mortgage. It does not appear that Walrath ever claimed any interest under this mortgage, or ever entered into possession of the property, or claimed to hold it by virtue of such mortgage or by any other right or tenure whatever. It also appears that the mortgage held by Lieb against Brown for $4,000 was satisfied of record on January 24, 1843, almost simultaneously with the satisfaction of the Depau mortgage. The evidence also shows that when Lieb purchased the Watson farm, in 1836, he paid the whole consideration therefor, with the exception of the amount of the Depau mortgage and a small balance of about $250, and the title therefor was taken in the name of Walrath, as trustee for Lieb, with the view of protecting it from anticipated claims of Lieb's wife, with whom he was then at variance. Thereafter both Lieb and Walrath lived on the farm until Lieb's death in 1846. Lieb was the purchaser in fact of the farm and, as conceded both by the trial court and the General Term, took an absolute title in fee under the statute of uses and trusts to the same under the

conveyance thereof by Watson to Walrath, and an agreement. of trust simultaneously executed therewith between Lieb and Walrath.

As between Walrath and Lieb, the latter was primarily liable for the payment of the Depau mortgage, and if any presumption of an indebtedness from Lieb to Walrath could arise under the circumstances of this case for payments made thereon by Walrath, it would be fully rebutted by the voluntary division of the farm between the devisees of Lieb, after his death, with Walrath's assent, and without any claim on his part of an interest therein, and the administration of the estate of Lieb by Walrath, as executor thereof. As such executor he had the right to retain, as a creditor of the estate, so much of the assets as were necessary to discharge his debts (2 Wms. Exr's, 896, 897), and in the absence of any claim on the part of Walrath, during his life, that the debt had not been paid, a conclusive presumption arises that, if it ever existed, it had in fact been paid. We, have therefore, reached the conclusion that Wooliver took no interest in the premises in question by his deed from Walrath :

*First.* Because it was void by statute by reason of Peggy Ellwood's adverse possession of the premises conveyed at the time of its execution.

*Second.* Because Walrath did not have possession of the property at the time of the conveyance.

*Third.* Because he had no mortgage thereon at that time.

The trial court therefore erred in dismissing the complaint on the ground that the defendant was a mortgagee in possession. The court at General Term, however, did not pass upon this question, but affirmed the judgment upon the ground that the proceedings by which the interest of the plaintiffs in the land was sold in 1856 were a substantial compliance with the provisions of the statute relating to the sale of infants' real estate, and that the conveyance executed by the special guardian appointed in such proceedings vested the title in Wooliver, the grantee, through whom the defendant derived his title.

We are unable to concur with that court in this conclusion. The common law does not recognize any mode by which an infant can be deprived of his title to real estate, against his consent or that of some person duly authorized to act on his behalf. (*Rogers* v. *Dill*, 6 Hill, 415 ; *Forman* v. *Marsh*, 11 N. Y. 544, 551 ; *Baker* v. *Lorillard*, 4 id. 257.) The statute has, however, provided a method by which such an interest may lawfully be sold, but this being a special proceeding, its requirements must be strictly pursued in order to validate such a sale. The statutes in force in 1856, at the time of this sale, were substantially as follows : By section 170, article 7, title 2, chapter 1, part 3, Revised Statutes (Edm. Stat. at Large, vol. 2, pp. 202, 203), power was given to the Court of Chancery, upon the application of any infant seized of real estate, to order the sale or disposition of his property in the manner therein directed. The mode of procedure was prescribed to be as follows : (§ 171.) The appointment of some suitable person as special guardian of the infant for such proceedings. (§ 172.) The execution by such guardian of a good and sufficient bond for the faithful performance of the trust reposed in him. (§ 174.) Upon the filing of such bond the court was authorized to proceed " in a summary manner, by reference to a master, to inquire into the merits of the application." (§ 175.) If it thereby satisfactorily appeared to the court, for any of the reasons set forth in the statute, that a disposition of any part of the real estate of the infant was necessary and proper, it was authorized to order its sale or disposition by such guardian. (§ 177.) Upon an agreement for a sale or other disposition of the property being made by the guardian, in pursuance of the order therefor, he was required to report it on oath to the court, and if it was confirmed, a conveyance thereof was authorized to be executed under the direction of the court. Section 178 then provides : " All sales, leases, dispositions and conveyances made in good faith by the guardian in pursuance of such orders, when so confirmed, shall be valid and effectual as if made by such infant when of full age." The powers conferred the upon

Court of Chancery were subsequently extended to County Courts by the Code of Procedure.

No evidence whatever was offered of any compliance with the provisions of the statute above set forth, except the presentation to the Jefferson County Court of a petition for an order of sale and the appointment of a special guardian to make such sale; the appointment of such guardian and the execution by him of a bond, and the approval thereof by the county judge.

None of the provisions so carefully framed by the statute to inform the court of the circumstances of the case, and the propriety of the sale, were pursued or regarded by the parties conducting the proceedings. As appears from the evidence, no reference to a master, or to a referee who is made the substitute for one was ever made, and the court was never informed of the situation and value of the land, the reasons for its sale, the name of the intending purchaser, the price to be obtained, the manner of its payment or any of the circumstances, which would enable it to exercise its judgment in pronouncing upon the propriety or prudence of the intended sale, or its effect upon the interests of the infants. No order was ever made by the court except that appointing a special guardian for the purposes of the petition.

It is quite obvious from the plain reading of the statute, that it was intended thereby that the judgment of the court upon all of these questions should be the condition of any authority in the special guardian to execute a conveyance. It is impliedly required that a conveyance shall be preceded by a contract of sale, and that such contract shall be reported by the guardian on oath to the court. Upon confirmation of such report, and only in that event, is there any authority under the statute for the transfer of an infant's title to real estate. (*Stilwell* v. *Swarthout,* 81 N. Y. 109; *Rea* v. *McEachron,* 13 Wend. 465.) This view is further confirmed by section 178 of the statute, which, by necessary implication forbids any other sale, and declares all sales, dispositions and conveyances, which are not made in pursuance of such orders so con-

firmed, to be void. Under the provisions of the statute no general authority can be conferred upon a special guardian to sell and convey an infant's real estate, but every sale must be specially reported to the court, and specially approved by it, and special authority, to make the particular conveyance must be obtained in order to vest the title in a purchaser.

It is elementary, that statutory provisions in derogation of the common law, by which the title of one is to be divested, and transferred to another, must be strictly pursued, and every requisite thereof having the semblance of benefit to its owner, must be complied with in order to divest his title. (*Atkins* v. *Kinnan*, 20 Wend. 241; *Battell* v. *Torrey*, 65 N. Y. 294, 299; *Stilwell* v. *Swarthout*, 81 id. 109.)

In the *Matter of Valentine* (72 N. Y. 184, 186), which was a proceeding under the statute for the sale of the real estate of a lunatic, Judge CHURCH says: "The petition in this case was proper, and gave the court jurisdiction to proceed and determine the subject-matter involved; but it conferred jurisdiction to proceed, not according to the direction of the court, but in accordance with the statute. * * * The statute provides that on the presenting of such petition, it shall be referred. * * * In this case no reference was made, and there was no hearing of the parties interested and no report. We think that this requirement was substantial and cannot be dispensed with, and that its omission constitutes a fatal defect to the proceeding."

In *Battell* v. *Torrey* (65 N. Y. 294, 296), in proceedings under the statute to sell or mortgage the real estate of an infant, which resulted in a mortgage, it was held that the mortgage executed was void because the provisions of the statute were not complied with. The court said: "The right to execute such a mortgage is, by the statute authorizing such proceedings, made to depend upon a confirmation by the court of the agreeement reported; then, in the language of the statute, if it be confirmed, a conveyance shall be executed under the direction of the court."

These authorities seem to be in point upon the questions

involved in this case, and must be deemed controlling in its determination. The plaintiffs were, by reason of their infancy, not only incapable of conveying their land, but incompetent to consent to, or validate any of the proceedings taken to procure its disposition. They stood in the position of parties hostile to the proceedings and objecting to every step taken therein.

The burden of proof to show that they acquired the infants' title, rested upon the defendant, and he must establish, by affirmative evidence, that every requirement of the statute necessary to confer jurisdiction upon the court to order a sale of the infants' property has been complied with. In the absence of proof thereof, there are no presumptions in such proceedings that material requirements of the statute have been performed or complied with. Its jurisdiction is made conditional, and the circumstances upon which it depends must be made to appear by proof. The other questions in the case were properly disposed of by the courts below.

The judgments rendered by the General and Special Terms must be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgments reversed.