GEORGE R. LOSEY et al., Respondents, *v.* ARTHUR G. STANLEY and LEONORA J. STANLEY, Infants, etc., et al., Appellants.

1. REMAINDERS — TRUSTS — ESTATE OF TRUSTEE. Future legal estates in lands not covered by a trust, but created to take effect in possession on the termination of a prior trust estate for life, are not within the provisions of the Statute of Uses and Trusts (1 R. S. 729, § 60) declaring that every valid express trust shall vest the whole estate in the trustee.

2. BENEFICIARY — APPOINTMENT AS TRUSTEE. An appointment of the beneficiary as trustee, made by the court on the death or resignation of the testamentary trustee, does not extinguish the trust, whether the trust would be void or not in its inception if the sole beneficiary had been appointed trustee by the instrument creating the trust.

3. INFANTS' REAL PROPERTY — MORTGAGE — POWER OF EQUITY. A court of equity has no inherent power to direct a mortgage of the real property of infants ; its power in this respect is purely statutory.

4. MORTGAGE BY TRUSTEE — INFANTS' ESTATE OUTSIDE OF TRUST — POWER OF COURT. The vested interests in remainder of infants which are not included in a trust estate for life cannot be included in a mortgage by the trustee under direction of the court by virtue of the proviso added by the Laws of 1886 (Chap. 257), as an amendment to the 65th section of the Statute of Uses and Trusts (1 R. S. 730), whereby a trustee under direction of the court or judge may in a proper case be allowed to mortgage or sell the real estate held in trust.

5. FORECLOSURE — VOID MORTGAGE ON INFANTS' ESTATE — COLLATERAL ATTACK. A collateral attack on an order for the mortgaging of infants' real property can be made in an action brought to foreclose the mortgage, where the order was made without jurisdiction in a proceeding by a trustee of a life estate which did not include the interests of the

infants, in remainder, although a guardian *ad litem* was appointed for the infants and consented to the order.

*Losey* v. *Stanley* (83 Hun, 420), reversed.

(Argued May 27, 1895; decided November 26, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made December 27, 1894, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a mortgage on certain lands in the city of Rochester, consisting of a tract of about sixteen acres, executed by James W. Stanley as trustee on the 23d day of November, 1888, to George R. Losey and others as security for a note of the mortgagor for the sum of $1,000, signed by him as trustee, and as a continuing security to the extent of $3,500 for further advances or responsibilities which might be made or incurred by the mortgagees for Stanley either personally or as trustee. The mortgage contains a recital that it was made pursuant to an order granted by the Supreme Court October 22nd, 1888, and that it was given for the benefit " of said estate above described." Elizabeth J. Stanley, the mother of James W. Stanley, and the grandmother of the infant defendants, died March 20, 1871, seized of the premises embraced in the mortgage, and by her will devised and bequeathed all her estate, real and personal, to one Martin Briggs upon the following trust, viz.: " To convert all my personal estate into money and invest the same in safe security, and to take charge of, rent and to receive the income and profits of all my real estate, and, if deemed by him advisable, to sell and convey such real estate and convert the same into money, to be invested in good safe security, and to pay over quarterly in each year to my beloved son, James W. Stanley, during his natural life, the net income of all my said estate, after deducting the expenses and charges of executing the trust and the fees and commissions and charges of said executor and trustees." The testatrix by the third

71

item in her will declared that "after the death of my said son, James 'W. Stanley, in'case he shall leave a child or children born of his body in lawful wedlock, or a descendant of such child or children, then I give, bequeath and devise all my said estate to such child or children of the said James W. Stanley, share and share alike, forever." There was a gift over to certain specific persons in case of the death of James W. Stanley "without lawful issue him surviving." The trustee named in the will accepted the trust and subsequently died December 24, 1883.

James W. Stanley married after the death of his mother, and there were two children of the marriage living at the death of Briggs, aged respectively about nine and six years, and both are still living and are the infant defendants. After the death of Briggs, and on the 18th of November, 1884, upon the petition of James W. Stanley, the-beneficiary in the trust, an order was made by the Supreme-Court appointing him the trustee in place of Briggs, deceased. The order of appointment recites that the guardian *ad litem* of the infants consented thereto. On the.22nd day of October, 1888, the order was made which lies at the foundation of the present controversy. It was based on a verified petition of James W. Stanley, dated October 13, 1888. It alleges his appointment as trustee under the will of Elizabeth J. Stanley by the order of November 10, 1884; that the petitioner desires to raise by sale or mortgage of the real estate described, held by him as trustee, the sum of at least $3,500; that in his opinion such sale or mortgage would be for the best interests of the estate, and that the amount mentioned is "necessary for the purpose of preserving and improving said estate." The reasons why, in his opinion, such sale or mortgage was desirable were stated as follows: "The property is in an unproductive condition, and, at present, is not producing the amount of the taxes assessed upon it. It is indebted for taxes already past due to the amount of upwards of five hundred dollars. There are three dwelling houses on the premises, all of which need repairs, and which, when properly repaired, could be rented

to much greater advantage to the estate.    If kept in its present unproductive condition the property will rapidly decrease in value, and would result in great loss to the estate," and further, "that there is no property with which said estate can be preserved and improved as aforesaid, unless such petitioner is allowed to make such sale or mortgage."    The petition alleges that the beneficiaries of the trust are the two infant defendants, and the devisees over, and states their respective names and residences, and the ages of the infants.    It prays that the petitioner may be authorized, as such trustee, "pursuant to the statute in such case made and provided," to sell or mortgage the real estate upon such terms and conditions as to the court shall seem just and proper.

The record discloses that following the presentation of the petition an order was made October 15, 1888, that notice of the proceedings be given to the infants, returnable October 17, 1888, and an affidavit was produced from the files of the court, made by James W. Stanley, the petitioner, of service by him on the day of the date of the order, of a copy of the petition and notice on the infant children and their mother. The record further shows that on the return day of the order (October 17, 1888) the court appointed a guardian *ad litem* of the two infants to protect their interest in the proceedings.

On the 22nd day of October, 1888, the court granted the order to mortgage.    It recites the filing of the petition of October 13; that due notice of the application had been given to the beneficiaries of the trust; the appointment of a special guardian of the infants; his report dated October 19, 1888, in favor of the application, and his consent "in all ways to said application;" the consent of the ulterior devisees to the granting of the order, and that no one appeared in opposition. The order then proceeds: "It is hereby ordered that leave be and is hereby granted to said James W. Stanley, as such trustee, to sell either at public or private sale in his discretion or mortgage for the amount of $3,500, with lawful interest thereon, the real estate described in said petition as follows," and then follows a description of the premises.    The petition

stated in general terms that the petitioner was trustee under the will of Elizabeth J. Stanley, but its contents were not disclosed, and it does not appear that the will was produced on the hearing or that the court was in any way apprised of its contents, or of the interests of the infants thereunder. It does not appear that any evidence was presented to the court of the facts stated in the petition. It would seem that the court in making the order acted upon the petition alone, and the consent of the guardian *ad litem* without further inquiry. The proposed mortgage was not reported to the court and no order appears to have been made approving it, nor was any bond given for the protection of the interests of the infants. It appears from the findings of the court that the indebtedness of $3,500, for the recovery of which the mortgage was foreclosed, was for money borrowed on notes made by Stanley as trustee subsequent to the execution of the mortgage. The court found that no part of the money alleged in the complaint to have been borrowed by Stanley was used by him for the benefit of the trust estate.

James W. Stanley died in the year 1890, before the commencement of this action.

*Joseph W. Taylor* for appellants. The finding of fact that notice of the application for leave to make the mortgage was served upon these appellants is wholly unsupported by the evidence. (Code Civ. Pro. §§ 425, 433, 927; *In re King,* 42 Hun, 607; *In re Mayor, etc.,* 27 N. Y. S. R. 188; *In re King,* 130 N. Y. 602, 606.) The claim that as proof of service of notice of the application appears in the record, and the final order recites that service was made, it is now open to these defendants to raise the question of lack of service of notice, is wholly untenable. (*Ferguson* v. *Crawford,* 70 N. Y. 253; *C. C. Bank* v. *Parent,* 47 N. Y. S. R. 643; *C. C. Bank* v. *Judson,* 8 N. Y. 254; *Poilon* v. *Lawrence,* 77 N. Y. 207; *Craig* v. *Town of Andes,* 93 N. Y. 405; *Elliot* v. *Peirsol,* 1 Pet. [U. S.] 128; *Hickey* v. *Stewart,* 3 How. [U. S.] 750; *Williamson* v. *Berry,* 8 How. [U. S.] 495; *Webster*

v. *Reed,* 11 How. [U. S.] 437; *Riggs* v. *Pursell,* 74 N. Y. 370.) If the petition and notice were served as claimed, that service was ineffectual, because made by James W. Stanley, who was a party to the proceeding. (Code Civ. Pro. §§ 425, 433; *Ellwood* v. *Northrup,* 106 N. Y. 172, 185.) As James W. Stanley was the sole beneficiary of the trust created by his mother's will, his appointment as trustee was absolutely void, and all his acts under such appointment were also absolutely void. (*Craig* v. *Hone,* 2 Edw. Ch. 554; *Coster* v. *Lorillard,* 14 Wend. 265; *Bundy* v. *Bundy,* 38 N. Y. 410; *Wetmore* v. *Thurlow,* 51 N. Y. 344; *Wetmore* v. *Parker,* 52 N. Y. 450; *Rogers* v. *Rogers,* 111 N. Y. 228; *Woodward* v. *James,* 115 N. Y. 346; *Rose* v. *Hatch,* 125 N. Y. 427; *In re Shipman,* 22 N. Y. S. R. 356–261; 3 Birdseye Stat. 3180, § 24; *People* v. *Norton,* 9 N. Y. 176; *In re Waring,* 99 N. Y. 114; *In re Van Schoonhoven,* 5 Paige, 559; *Cruger* v. *Jones,* 18 Barb. 467; *Douglas* v. *Cruger,* 80 N. Y. 15; *Lent* v. *Howard,* 89 N. Y. 169.) The lien of the mortgage attached only to the life estate created by the will for the life of James W. Stanley, and when, by his death, that estate was terminated, the lien of the mortgage ceased. (3 Birdseye Stat. 2555, § 68, 3179, 3180, §§ 16, 23; *Powers* v. *Bergen,* 6 N. Y. 358; 2 Washb. on Real Prop. 560; *Healey* v. *Auston,* 25 Miss. 190; *Hopkinson* v. *Demas,* 42 N. H. 306; *Gardner* v. *Astor,* 3 Johns. Ch. 53; *Bundy* v. *Bundy,* 38 N. Y. 410; *Stevenson* v. *Lesley,* 70 N. Y. 512; 3 Birdseye Stat. 2561, § 73; 1 Washb. on Real Prop. [5th ed.] 129–132; *In re Miller,* 1 Tucker, 346, 348; *Stillwell* v. *Doughty,* 2 Brad. 312; *De Witt* v. *Cooper,* 18 Hun, 67; *King* v. *King,* 9 J. & S. 516; *Peck* v. *Sherwood,* 65 N. Y. 615; *Deraismes* v. *Deraismes,* 72 N. Y. 154; *Thomas* v. *Evans,* 105 N. Y. 601; *Cairnes* v. *Chabert,* 2 Edw. Ch. 312; Code Civ. Pro. § 2348; *Jenkins* v. *Fahey,* 73 N. Y. 355; *Dodge* v. *Stevens,* 105 N. Y. 585; *Goebel* v. *Iffla,* 48 Hun, 24; *In re Clarke,* 59 Hun, 557; 128 N. Y. 658; *In re Roe,* 119 N. Y. 509; *In re Conkling,* 7 N. Y. S. R. 280; *Harvey* v. *Harvey,* 2 P. Wms. 21; *Saunders* v. *Vautier,* 4 Beav. 115; *Rocke* v. *Rocke,* 9 Beav. 66; *Barlow*

v. *Grant*, 1 Vern. 255; *In re Bostwick*, 4 Johns. Ch. 99; *Banks* v. *Duckenfield*, 18 N. Y. 592; *Trust Co.* v. *Roche*, 116 N. Y. 120; *Scholle* v. *Scholle*, 101 N. Y. 167; U. S. Const. art. 5; N. Y. Const. art. 1, § 6; *Wynehamer* v. *People*, 13 N. Y. 378; *Embury* v. *Conner*, 3 N. Y. 511, 516, 517; *N. Y. & O. M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473–477; *In re D. C. Assn.*, 66 N. Y. 569–571; *Cochran* v. *Van Surlay*, 20 Wend. 365, 373; *Douglas* v. *Cruger*, 80 N. Y. 15; *Lent* v. *Howard*, 89 N. Y. 169; 136 N. Y. 326.) In the proceeding in which the making of the mortgage was authorized there was neither allegation nor proof showing a necessity for raising money. (*Ellwood* v. *Northrup*, 106 N. Y. 172; *Riggs* v. *Pursell*, 74 N. Y. 370, 378; *Blank* v. *Blank*, 107 N. Y. 91, 95; *Smith* v. *Zalinski*, 94 N. Y. 519, 524; *Veeder* v. *Baker*, 83 N. Y. 156, 163.) There is no sufficient description, either in the mortgage or in the notes, of the capacity in which James W. Stanley acted to charge the trust estate. (1 Edw. on Bills & Notes, p. 79; *Hill* v. *Bannister*, 8 Cow. 31; *Barlow* v. *Myers*, 24 Hun, 288; *Schmittler* v. *Simon*, 101 N. Y. 554; *Ferrin* v. *Myrick*, 41 N. Y. 315; *Austin* v. *Munro*, 47 N. Y. 360; *Dewitt* v. *Walton*, 9 N. Y. 571; *Pumpelly* v. *Phelps*, 40 N. Y. 59.)

*William F. Cogswell* for respondents. The order of the court, appointing Stanley as trustee in place of Mr. Briggs, deceased, was not void; it may have been improper or erroneous, and one which would have been revoked upon motion or reversed upon appeal, but it was not void. The court had jurisdiction of the subject-matter, probably, by virtue of its inherent power over trusts; certainly by virtue of the statute. (1 R. S. 730, § 71; *Rogers* v. *Rogers*, 111 N. Y. 228.) It was competent for the court to authorize the giving of the mortgage, and the same became an incumbrance upon the fee. (1 R. S. 729, § 60; 1 R. S. 730, § 65; Laws of 1886, chap. 257; *Harvey* v. *Harvey*, 2 P. Wms. 21; *In re Bostwick*, 4 Johns. Ch. 99; *Trust Co.* v. *Roche*, 116 N. Y. 120; *In re Morris*, 113 N. Y. 693; 69 Hun, 619.) The plaintiffs were

not required to see to the application of the moneys raised upon the mortgage. (1 R. S. 730, §§ 63, 66; *Goebel* v. *Iffla*, 48 Hun, 24; Laws of 1882, chap. 275 ; Laws of 1882, chap. 26 , Laws of 1882, chap. 257 ; *Leggett* v. *Perkins*, 19 N. Y. 445 ; *Brevoort* v. *Grace*, 53 N. Y. 245.)

ANDREWS, Ch. J. This appeal presents a question of broader interest than attaches merely to the pecuniary rights of the parties to the litigation. . It involves a consideration of the power of the Supreme Court in dealing with the real property of minors, and the extent of its jurisdiction in directing a sale or mortgage of their property. By the will of Elizabeth J. Stanley a trust was created in the real property of which she died seized, during the life of her son, James W. Stanley, for his benefit, with remainder to his children or their descendants living at his death, and in default of such issue to certain other specified devisees. James W. Stanley was unmarried at the death of his mother and the remainder to his children was contingent until the birth of issue. He subsequently married and there were two children of the marriage (the infant defendants) who were living when the mortgage in question was executed. Under the will, the first born child of James W. Stanley took at its birth a vested estate in remainder in the land devised, subject to open and let in afterborn children as they severally came into being, and such vested remainder became a fee simple absolute in the children living at the death of their father. (1 Rev. St. 723, § 13; *Moore* v. *Littel*, 41 N. Y. 66; *Williamson* v. *Berry*, 8 How. [U. S.] 495.) The estate in the children of James W. Stanley was a legal estate. The estate of the trustee was for the life of James W. Stanley and terminable at his death. The will created two distinct legal estates in the devised property, viz., an estate in the trustee for the life of the beneficiary, with the right of possession and to receive the rents and profits during the continuance of the trust, and an estate in remainder which became vested on the birth of children as before stated. The trustee had no power over the estate in remainder

except such as may have been given him by the will. He could not sell or incumber it or in any way by his own act alter or affect the interests of the remaindermen unless authorized by the will. The provision of the Statute of Uses and Trusts (1 Rev. St. 729, § 60), declaring that every valid express trust shall vest the whole estate in the trustees, is by settled construction limited to the trust estate, and has no application to future legal estates in lands covered by the trust, to take effect in possession on the termination of the trust. The trustee in the present case had an estate for the life of James W. Stanley, and it was this estate and this only which vested in the trustee. (*Stevenson* v. *Lesley,* 70 N. Y. 512.) The will of Elizabeth J. Stanley conferred on her executor and trustee a power to sell the real estate devised, if deemed by him advisable so to do for the purpose of investment of the proceeds. It gave him no power to sell the lands for the payment of debts, or for any other than the specified purpose. It conferred no power to mortgage, and it is not claimed nor could it be reasonably contended that the mortgage in question can be sustained as an exercise of the power of sale contained in the will. (*Albany Fire Ins. Co.* v. *Bay,* 4 N. Y. 9; *Bloomer* v. *Waldron,* 3 Hill, 361; *Rogers* v. *Rogers,* 111 N. Y. 228.) When, therefore, the application for leave to mortgage the premises in question was made to the court by James W. Stanley, October 15, 1888, the infant defendants were vested with a legal estate in the remainder in the premises, and the trustee had no power under the will to sell or otherwise affect or incumber their estate for the purposes specified in the application.

We shall pass without comment the question urged upon us, that the appointment of James W. Stanley, the sole beneficiary of the trust, as the trustee, was unauthorized and void. We entertain some doubt whether a trust is void in its inception where the instrument creating the trust appoints the sole beneficiary the trustee, but we have no doubt that the appointment of the beneficiary as trustee by the court, on the death or resignation of the testamentary trustee, does not extinguish the trust. The incom-

patibility of the two relations united in the same person is evident. Whether a trust so constituted in the first instance may not be sustained, leaving it to the court to substitute a competent trustee, will need consideration when the question directly arises. (*Rogers* v. *Rogers, supra ; Woodward* v. *James,* 115 N. Y. 346.)

We come to the main question, and that is whether the court, either by virtue of an inherent or statutory power, could, upon the application made in this case, authorize James W. Stanley to bind the estate of the infant remaindermen by mortgage. That the Supreme Court, acting as a court of equity, possesses an inherent jurisdiction for some purposes over the persons and estates, real and personal, of minors, cannot, we think, be successfully controverted. The origin of the jurisdiction of the Court of Chancery in England over the persons and estates of infants is involved in some obscurity. The better opinion seems to be that it grew out of the transfer by the Crown to the chancellor of the supervision theretofore exercised by the king as *parens patriæ* over persons who, by reason of non-age, were incapable of acting for themselves. (See 2 Sto. Eq. Jur. § 1327, *et seq.*) The chancellor intervened for the protection of minors and their property, and the precedents are numerous where the chancellor authorized the application of their property for their education and maintenance, and, at times when the interests of the infants seemed imperatively to require it, permitted even the capital of a fund belonging to the infants to be anticipated or broken in upon for such or similar purposes. (*Harvey* v. *Harvey,* 2 P. Wms. 21; *Saunders* v. *Vautier,* 4 Beav. 115; *Rocke* v. *Rocke,* 9 Beav. 66; *In re Bostwick,* 4 Jo. Ch. 100.) But this power of management and disposition exercised by the chancellor (if not always so) came to be regarded as extending only to the personal estate of infants and to the income of their real property. It did not extend to the binding of the inheritance. The question came before Lord HARDWICKE in *Taylor* v. *Philips* (1 Ves. Sr. 229) and he said : " There is no instance in

72

this court binding the inheritance of an infant by any discretionary act of the court. As to personal things, as in the composition of debts, it has been done; but never as to the inheritance; for that would be taking on the court a legislative authority, doing that which is properly the subject of a private bill." And in *Russel* v. *Russel* (1 Molloy, 525) the lord chancellor of Ireland said : " I have no authority to bind an infant's legal estate. This was decided long ago by Lord HARDWICKE in *Taylor* v. *Philips.* The chancellor has never since attempted to deal with the legal inheritance of infants without the aid of Parliament." The subject of the inherent jurisdiction of equity over the estates of infants was considered by NELSON, J., in his dissenting opinion in *Williamson* v. *Berry* (*supra*), which, upon this point, has been frequently referred to with approval. Speaking of the powers of management and control over the property of infants vested in courts of chancery, he says : " They relate to their personal and the income of their real estate, the court having no power to direct the sale of the latter for their maintenance and education ; that power rests with the legislature." The doctrine has been frequently declared in this state that a court of equity has no inherent power to direct the sale or mortgage of the real property of infants, and that its power in this respect is purely statutory. (*Rogers* v. *Dill,* 6 Hill, 415; *Baker* v. *Lorillard,* 4 N. Y. 257; *Forman* v. *Marsh,* 11 id. 544; *Horton* v. *McCoy,* 47 id. 26; *Jenkins* v. *Fahey,* 73 id. 355, 361.) The obiter remarks of Ch. KENT on this subject in *Matter of Salisbury* (3 Jo. Ch. 348) and in *Hedges* v. *Riker* (5 Jo. Ch. 163) are contrary to the general current of authority. The text books are explicit in stating the modern doctrine on the subject (Pom. Eq. Jur. § 1309 ; Bispham's Eq. § 549). The question of the inherent power of a court of equity to order a sale of an infant's real property, upon the theory of a supposed benefit to him, is quite distinct from its acknowledged power in the enforcement and protection of trusts and from the power of courts in the exercise of their ordinary jurisdiction to establish or enforce rights of

property between parties to a litigation, whether infants or adults.

Having reached the conclusion that the order made in the case has no support in the inherent jurisdiction of the court over the estate of the infant defendants, it remains to consider whether it can be sustained under any statutory authority. The legislature possesses whatever power as *parens patriæ* was in England lodged in the sovereign over the estates of infants, consistent with constitutional limitations. From the origin of the state government the legislature has enacted statutes conferring upon courts in certain cases and under careful restrictions the power to order the sale or mortgage of the real property of infants for their benefit. The petition presented to the court in this case asked that the order be granted "pursuant to the statute in such cases made and provided," but no specific statute was referred to. On the argument at the bar the only statutory authority relied upon to sustain the order was the 65th section of the Statute of Uses and Trusts, as amended by chapter 257 of the Laws of 1886. The original section declared that: "When the trust shall be expressed in the instrument creating the estate, every sale, conveyance or other act of the trustee in contravention of the trust shall be absolutely void." This was plainly a provision for the protection of the trust estate against destruction or impairment by the unauthorized act of the trustee. The estate to which the section refers is the trust estate, that is, the estate held under the trust. It did not in the nature of things comprehend legal estates in remainder in the same land taking effect on the termination of the trust. It needed no statute to protect remaindermen as against any sale or conveyance by the trustee. It perhaps added nothing to the protection of the *cestui que* trust beyond that given by the common law. But it was a statutory expression of a rule which would challenge the attention of the trustee and of persons dealing with him in respect to the trust. But the material point is, that the legislature, in enacting the section, was dealing with transactions by the trustee in respect to the trust estate. The

trust estate, in a case like the present, was the estate for the life of the beneficiary named. An attempted sale or conveyance by the trustee of the estates in remainder would, doubtless, be ineffectual, but this would be so for the reason that the trustee would have no estate in remainder to sell or convey, and not because such sale or conveyance would be in contravention of the trust. The estates in remainder would be outside of and not within the trust. The amendment of 1886 relaxed somewhat the stringency of the original section. It added a proviso giving power to the Supreme Court to authorize any trustee to " mortgage or sell any such real estate whenever it shall appear to the satisfaction of said court or a judge thereof that it is for the best interest of the said estate so to do, and that it is necessary and for the benefit of the estate to raise by mortgage thereon or by a sale thereof funds for the purpose of preserving or improving such estate." But the amendment in no wise vested in the court a compulsory power to order the sale or mortgage of estates outside of the trust. It makes no reference to infants or persons incapable of acting for themselves, and if the construction claimed could be sustained it would authorize the court to order the sale or mortgage of the estates in remainder of adults without their consent, for the purposes specified, which would be plainly unconstitutional. (*Powers* v. *Bergen*, 6 N. Y. 358 ; *Brevoort* v. *Grace*, 53 id. 245.) The scope and purpose of the section and the amendment is plain. It was to vest in the court the power to order a sale or mortgage, which, under the section as it originally stood, it might not possess, when necessary to preserve and improve the trust estate, and this purpose is emphasized by the circumstance that notice of the application is required by the final clause of the amendment to be given only to the beneficiaries of the trust. It is claimed that the case of *In re Morris* (63 Hun, 619), which was affirmed in this court without opinion (133 N. Y. 693), is adverse to the construction here given to the section as amended. The principal question argued in that case seems to have been whether certain assessments for local improvements were to be borne by

the trust estate alone or should be apportioned between the trust estate and the estate in remainder. The opinion in the General Term did not refer to the question here considered. If that case should seem in any aspect to conflict with the construction we now place upon the statute we think it ought not to be followed. It would be most dangerous to establish a construction of the statute of 1886, which would make it possible to deprive infants of their inheritance by hurried and informal proceedings, such as were taken in this case, and that too on the application of a party hostile in interest, and who by the general rule of law was bound to pay the ordinary taxes and improvements upon the property.

This decision does not leave the court without power upon the application by or in behalf of infants whose property is in danger of being lost by the failure of duty of a life tenant to pay taxes or make improvements, or for other reason, to intervene for their protection. The provisions of the Code (Sec. 2348 *et seq.*) for the sale or mortgage of the real estate of infants are ample for such contingencies. They are in the main transcripts from the Revised Statutes. But proceedings under these sections are hedged about by safeguards, preventing inconsiderate action by courts, and by requiring security, protect infants against the dishonesty of those who undertake to represent them. The court has on repeated occasions declared proceedings instituted under these provisions to be void, when not taken in conformity to the statute. (*Ellwood* v. *Northrup*, 106 N. Y. 172; *In re Valentine*, 72 id. 184; *Battell* v. *Torrey*, 65 id. 294.) There is no pretense that this is a proceeding under the general statute for the sale or mortgage of the real estate of infants. It conformed to none of its requirements. The consent of the guardian *ad litem* of the infant defendants to the granting of the order does not conclude them. (*Ellwood* v. *Northrup*, *supra.*) The court had no jurisdiction to grant the order, and it is open in this proceeding to collateral attack for want of jurisdiction. (*Risley* v. *Phenix Bank*, 83 N. Y. 318; *Williamson* v. *Berry*, *supra.*) The plaintiffs may as a conse-

quence of our decision lose their money. But they were chargeable with notice of the statements in the petition and of the legal interests of the children in the land. (*Pitcher* v. *Carter*, 4 Sand. Ch. 1, 20.) The infants on the other hand have had no benefit from the money advanced to their father, and they should not lose their inheritance unless it has become bound in accordance with law.

The judgment below should be reversed and a new trial granted.

All concur (FINCH, J., in result), except GRAY, J., not voting, and HAIGHT, J., not sitting.

Judgment reversed.