### In re L'HOMMEDIEU.

(District Court, E. D. New York. June 13, 1905.)

1. WILLS—TRUSTS—CREATION.

Where testator devised all his property to his son, to lease the real estate, and invest the personal property, and receive the rents, income, and profits, and after paying taxes, insurance, etc., to apply the residue to the maintenance of testator's wife, unmarried daughters, and minor children, etc., until two of his daughters should arrive at the age of 21 years, and, on the happening of such event, to distribute the trust property in the manner specified, etc., he created an express trust, under New York Real Property Law, § 76, subd. 3 (Laws 1896, p. 571, c. 547), authorizing a trust to be created to receive the rents and profits, and apply the same to the use of any person for life or for any shorter term.

2. SAME—BENEFICIARIES—TERMINATION.

The beneficiaries of the trust were the testator's wife, unmarried daughters, and minor children, who were entitled to the income of the trust estate until the death of testator's two minor children, or their arrival at the age of 21 years, when the trust terminated.

3. SAME—ESTATE OF TRUSTEE—RIGHTS OF DISTRIBUTEES.

Where testator bequeathed his real and personal property to his son in trust to apply the rents and profits to the maintenance of his wife

and minor children until two of them died or became of age, when the trust should cease and the property be divided among testator's children, and authorized the trustee, in his discretion, to sell the testator's real estate, the trustee's rights in such real estate were limited to the purposes of the trust; and hence the distributees under the will took title to real property as to which the trustee's power of sale was not exercised as remaindermen, vested as of the death of the testator.

4. SAME—POWER OF SALE.
The grant of the power of sale merely authorized the trustee to sell in pursuance of the power and not as trustee, and therefore did not enlarge the trustee's estate.

5. SAME—JUDGMENTS—LIEN.
Where testator devised all of his real and personal property in trust to use the income for the benefit of his wife, unmarried daughters, and minor children until two of them died or became of age, after which he directed that the estate be distributed among his children, the vested remainder to which one of such children was entitled at testator's death was subject to the lien of a judgment properly docketed against him, which lien, in case of a sale of the real estate under a power contained in the will, attached to the proceeds.

6. SAME—EQUITABLE CONVERSION.
A provision of a will empowering testator's executor, in his own discretion, and at such time or times as he shall deem proper, to sell either at public or private sale any and all of testator's real estate, was a discretionary and not an imperative power, and therefore did not constitute an equitable conversion of testator's realty into personalty.
[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Conversion, §§ 38–43.]

7. SAME—LIENS—PRIORITY—EQUITY—PARTIES.
Where, in a proceeding to determine the validity and priority of certain liens, the assignees junior in time sought to have an alleged senior lien annulled for usury, but the holder of such lien made no claim on the fund in controversy when brought into court against his will, and filed no pleadings, and the proceedings of the other claimants established that he was prima facie entitled to payment from the fund, and thereupon attempted to show that his title was avoidable for usury, such adverse claimants were not entitled to have the fund released from such senior lien without paying the holder thereof the consideration received by the debtor.

Pierre M. Brown, for bankrupt.
William H. Ford, for trustee.
James S. Darcy, for Russell and another.
Carter, Ledyard & Milburn, for King.
John D. Kaps, for Jenner.
William R. Willcox (Robert D. Murray, of counsel), for Gilman.

THOMAS, District Judge. The bankrupt's father died in 1892, leaving a will of real and personal property, and, upon settlement of his estate, certain moneys accruing to the bankrupt under such will were delivered to the trustee in bankruptcy for purposes hereafter considered. Several persons claim portions of the fund by virtue of specific liens or assignment, as follows: Russell and another by virtue of a judgment docketed January 21, 1897, in Queens county, where certain of the testator's land was situated; Hewlett, Gilman, and Jenner, severally, by virtue of assignments executed in October, 1891, November, 1901, February and July, 1902.

The validity of the assignments to Hewlett, King, and Jenner is not attacked, and these claims are payable in the order of their priority of execution; but all claims are subject to the payment of the Russell judgment, if it is a lien; and the claims of Hewlett, King, and Jenner are also subject to the assignment of Gilman, except so far as the same may be avoided for usury. The Russell judgment has priority, if it became a lien on certain real estate of which the testator died seised, and out of which the fund arose. The lien is denied upon the grounds that the will vested in the bankrupt no estate in land, upon which a judgment lien could attach, and that it converted the real estate into personalty. The will provides:

"First. I give, bequeath and devise all my property, whatsoever and wheresoever, to my son George A. L'Hommedieu, his successor or successors and assigns, in trust, however, for the following purposes, to wit:

"To lease my real estate and invest my personal estate and to receive the rents, income and profits of my real estate and the interest, income and profits of my personal estate, and, after paying the taxes, insurance, and costs of necessary repairs thereon and the expense of the administration of the trust, to apply the residue of the rents, income, interest and profits to the support and maintenance of my wife, unmarried daughters and minor children, and to the education of my minor children, during the minority of and until my daughters, Ida M. L'Hommedieu and Florence L'Hommedieu, shall each have attained to the age of twenty-one years, but no longer; and I set apart and establish my present residence as the place of residence and home for my said wife, unmarried daughters and my minor children, during the continuance of the trust, unless sooner sold by said trustee.

"Second. When my said daughters, Ida M. and Florence, or the survivor of them, shall have attained to the age of twenty-one years, or in case of the death of both of them under twenty-one years of age, then upon the decease of the longest liver of them, whichever event shall first happen, I direct the said trustee to distribute the trust estate in the following manner, viz.:

"(1) In case my wife shall then be living, to her the portion she would take, at the time of my decease, by law, in case I had died intestate, and this in lieu of dower.

"(2) The residue, or in case my wife shall then be deceased, the whole trust estate to and among my children share and share alike, the descendants of any deceased child or children to take the share the parent would take, if living.

"Third. Inasmuch as I have already advanced to my son James H., the sum of ten thousand dollars on his note, five per cent. interest per annum, to enable him to engage in business, therefore, I authorize and empower the said trustee to, and it is my will that he shall, in his best discretion, in like manner advance to each of my other sons, provided I shall not have done so before my decease, out of the trust estate, such sum or sums, not exceeding, however, in all, the sum of ten thousand dollars to any one of them as, in his best judgment, shall be requisite to enable each of them to engage in legitimate nonspeculative business; and, in case my son George A. shall desire to succeed to my business, or the business of my firm, in case the same shall be conducted by a firm, at the time of my decease, then I authorize and empower him to employ so much of the trust estate therein as he, or in case he shall organize a firm to carry on the said business by associating with him my son John K., that being my wish, or any other partner, then the said firm shall require to successfully carry on the said business, not exceeding, however, the sum of sixty thousand dollars, at the like rate of interest, the said trustee to complete all unfinished contracts, if any, binding upon my estate at the time of my decease, for the benefit of the trust estate, and, in case the interest on any sum or sums advanced, or employed, as authorized in this paragraph, shall fall in arrears and remain unpaid, I direct that the said trustee immediately call in the principal and collect the same with all unpaid interest.

"In case the money so advanced, either by me in my lifetime or by my said trustee thereafter, and the money so employed by my son George A., shall not have been repaid with the interest thereon, before the final distribution of the trust estate, then the same, or the unpaid portion thereof, with all unpaid interest shall be added to the trust estate and deducted from the share of the one of them to whom it was advanced, with all unpaid interest thereon.

"Fourth. It is my will and I accordingly direct the said trustee to support and maintain my wife, unmarried daughters and minor children during the continuance of the trust estate, in my present residence, in the same manner and style as I have done, and to make such allowance in money, aside from their support, to each of them as the income of the estate, in his best discretion, will permit, without prejudice to the support, maintenance and education hereinbefore provided for.

"Fifth. I hereby nominate and appoint my son, George A. L'Hommedieu sole executor of and trustee under this will and empower him, in his own discretion, at such time or times as he shall deem proper, to sell either at public or private sale, any or all of my real estate and to give good and sufficient deed or deeds for the effectual conveyance thereof."

The will creates an express trust, under subdivision 3, § 76, of the real property law of the state of New York (Laws 1896, p. 571, c. 547). The beneficiaries under the trust are the testator's wife, unmarried daughters, and minor children, not including the bankrupt. The trust terminates upon the death of two minor children, or their arrival at the age of 21 years, when the trustee should distribute the whole trust estate as follows: To the widow, if living, the portion she would take in case the testator had died intestate, "and this in lieu of dower," and the residue, or the whole trust estate, should she be dead at the time of this distribution, to the testator's children, share and share alike; the descendant of any deceased child taking the parent's share. The personal estate was about $170,000, and the real estate was $6,782.68 sold prior to January 1, 1896, and $70,685 subsequent to January 1, 1896. Very little real property was sold until 1903. The real estate consisted of vacant land, houses, and cottages, and the house occupied by the family, all located in Queens county, except one piece at Lake Placid, which sold for $3,496. The will, exclusive of the power of sale, did not authorize the trustee to sell the land, but the power did authorize such sale in the trustee's discretion.

If the power of sale were not exercised, who would take the real property? The persons described as distributees would take it, and it is considered that they would take it as remaindermen, by a title that vested in them at the death of the testator. There was a life estate carved out of the property. The trustee took an estate commensurate with the life estate, inasmuch as the declared purpose of the trust required that no greater estate be vested in him. Manice v. Manice, 43 N. Y. 305. The right acquired by the trustee was merely for the purposes of the trust, and nothing beyond that. Embury v. Sheldon, 68 N. Y. 235. He took no interest in the land not embraced in the trust. Stevenson v. Lesley, 70 N. Y. 517. He had an estate for the lives or minority of two children, and it was this estate, and this only, which vested in him. Matter of Tienken, 131 N. Y. 391, 30 N. E. 109; Losey v. Stanley, 147 N. Y.

568, 42 N. E. 8. In this regard it should be sufficient to read in connection sections 80, 81, and 82 (page 572) of the real property law. Section 80 of the real property law vests the legal estate in the trustee, subject only to the execution of the trust, and the beneficiaries, of whom the bankrupt was not one, did not take any legal estate or interest. Sections 81 and 82 provide:

"Sec. 81. The last section shall not prevent any person, creating a trust, from declaring to whom the real property, to which the trust relates, shall belong, in the event of the failure or termination of the trust, or from granting or devising the property, subject to the execution of the trust. Such a grantee or devisee shall have a legal estate in the property, as against all persons, except the trustees, and those lawfully claiming under him.

"Sec. 82. Where an express trust is created, every legal estate and interest not embraced in the trust, and not otherwise disposed of, shall remain in or revert to, the person creating the trust or his heirs."

The trust was not to sell. There was a grant of power to sell, but the grantee of the power, as such, and not as trustee, would sell. It did not enlarge the trustee's estate. Matter of Tienken, 131 N. Y. 402, 30 N. E. 109. The trust was merely to lease real estate; to receive rents, income, and profits of real estate; to invest personal estate; to receive the interest, income, and profits of personal estate; and apply the net amount of moneys so obtained for the support and education of designated beneficiaries during the minority of two persons, unless they earlier died. In such case the quantity of the trustee's estate is coincident with the beneficial right of the cestuis que trust, and when their right ceases the purpose of the trust and the estate of the trustee ceases. Losey v. Stanley, 147 N. Y. 560, 42 N. E. 8; Real Property Law, § 89. Such an estate in the trustee obviously did not exhaust all estates in the land. Stevenson v. Lesley, 70 N. Y. 512; Matter of Tienken, supra; Losey v. Stanley, supra. Life estates were carved out and supported by a trust of equal duration. But what became of the estate of inheritance which the testator had, and out of which by his will he created the estate for life? It went somewhere. Matter of Tienken, 131 N. Y. 401, 404, 30 N. E. 109. Who took it? Certainly the trustee did not take it. Either as a remainder it vested in the distributees, of whom the bankrupt was one, or, undisposed of by will, it went to the testator's heirs, of whom the bankrupt was one. Matter of Tienken, 131 N. Y. 401, 30 N. E. 109. The will directs that after the termination of the trust estate the trustee shall "distribute the trust estate" to the wife and children. But an express trust cannot be created for the mere purpose of distribution. The provision for distribution pointed out the persons to whom the trustee should deliver the property when his estate ceased, and what part of the estate he should deliver to each of such persons. The expiration of the trust necessarily preceded the distribution, and thereafter George A. L'Hommedieu acted as the grantee of the power; but the title was in the distributees or heirs, and for present purposes it is immaterial how the bankrupt took. It is true that when the trust terminated the life estate that had been carved out of the fee had been rejoined to it. Had there been a direct life

estate to the present beneficiaries, and remainder given to the children without the interposition of a trust, no one would doubt that a child's interest in the remainder would become subject to the lien of a judgment properly docketed against him in the proper county, even though the executor had a power of sale, nor that, if the executor exercised the power of sale, the lien would be transferred to the proceeds. Sayles v. Best, 140 N. Y. 368, 35 N. E. 636. In that case there was no trust, while here a trust intervenes between the life estate and remainder. But the creation of a trust does not of itself prevent the creation of a remainder vesting at the death of the testator. Embury v. Sheldon, 68 N. Y. 235; Stevenson v. Lesley, 70 N. Y. 517; Losey v. Stanley, 147 N. Y. 568, 42 N. E. 8. While it may not be important to inquire whether, pending the termination of the life estate, the bankrupt took by the will or as an heir, yet it is considered that the will intended that he should take a remainder vesting at the testator's death. If he took any remainder under the will, he took one vested or contingent, and, as to the real property, no element of a contingent remainder is present. When the testator directed the trustee to distribute the estate, he meant that an equal share of it should be delivered to each of his children. The will does not say "children then living." There is nothing in the language that indicates intention to limit the gift to those surviving at the time of distribution, and hence the usual rule would apply—that the children intended were those living at the death of the testator. Goebel v. Wolf, 113 N. Y. 405, 413, 21 N. E. 388, 10 Am. St. Rep. 464; Matter of Tienken, 131 N. Y. 391, 403, 406, 30 N. E. 109. If a child died before the testator, his descendants, if there were such, would take "the share the parent would take if living." But observe what such share would be. The will states that an advance had been made to the testator's son James H. on his note, and authorizes similar advances to other sons. This was in the nature of a loan, but the will provides that, if it were not repaid, it should be deducted from the share of the one to whom it was advanced. If it was not the intention to vest the son borrowing during the life estate with a share, it could not be expected that its repayment would be secured by deducting it from that share. Matter of Tienken, at pages 407, 408, of 131 N. Y., page 112 of 30 N. E. There are cases where a direction to pay or distribute has been held to vest no estate in the distributee until the arrival of the event upon which the distribution depended had happened. But that rule only aids interpretation. Matter of Tienken, at page 409 of 131 N. Y., page 112 of 30 N. E. In such cases there have been present facts that were deemed worthy to demand its application. In Delafield v. Shipman, 103 N. Y. 463, 464, 9 N. E. 184, the trustees were directed, upon the death of the testator's widow, to make division "between my children then living, and the descendants of any deceased child * * * so that such descendants of any deceased child will receive the same share which their parent would have received if living." It was held that a child dying before the widow took no vested estate, in the absence

of words showing a direct gift. In Smith v. Edwards, 88 N. Y. 92, there was no trust created. Judge Finch said:

"It has been often held that, if futurity is annexed to the substance of the gift, the vesting is suspended; but where the gift is absolute, and the time of payment only is postponed, the gift is not suspended, but vests at once. Critically examined, this is little more than stating the same problem in another form of words, and amounts practically to saying that, if the gift is future, it is not present; but nevertheless it has been useful in drawing sharply the distinction between a gift presently given and its deferred payment. 1 Jarman on Wills, 759; Warner v. Durant, 76 N. Y. 136. Out of that distinction has grown a rule which bears directly upon the present case—that, where the only gift is in the direction to pay or distribute at a future time, the case is not to be ranked with those in which the payment or distribution only is deferred, but is one in which time is of the essence of the gift. 1 Jarman on Wills, 762. The cases cited as holding this doctrine were instances in which the gift was conditioned upon an event to be determined in the future. Leake v. Robinson, 2 Mer. 363; Ford v. Rawlins, 1 Sim. & Stu. 328; Taylor v. Bacon, 8 Sim. 100. In such cases, until the happening of the future event, it must necessarily remain uncertain whether a gift would exist at all, and that could not be said to have vested which was not certainly given. So far the rule is undoubtedly established, and rests upon evident and sound reasons. It is decisive as to that portion of the bequest of the special fund which the testator directed should be paid at the period of final distribution to the grandchildren who should be living at that date. The condition of survival attached to the gift itself. Who the legatees would in fact prove to be, depended upon a future contingency. Those who were to take in the prescribed event were uncertain until it happened, might not be any one of those in esse at testator's death, and might prove to be a grandchild born twenty years later. The ultimate vesting of this portion of the principal of the special fund was therefore plainly postponed for twenty years, and not during designated lives in being, and must be declared invalid. Schettler v. Smith, 41 N. Y. 334."

It was further held that another bequest should not be construed as vesting, and one ground of the conclusion was that the whole interest was not given, but some part of it was diverted for the purposes of the estate. In Shipman v. Rollins, 98 N. Y. 311, the terms of the will, and the testator's presumed knowledge of the incapacity of the legatees to take, save in the future, were held to show an intention not to vest the legacies.

But the language of the present will, and the circumstances to be considered in connection therewith, do not prevent vesting, as in the cases noticed, and it is considered that the mere omission of technical words expressing a present gift did not prevent the vesting of the remainder at the death of the testator. Goebel v. Wolf, 113 N. Y. 405, 412, 413, 21 N. E. 388, 10 Am. St. Rep. 464; Matter of Tienken, 131 N. Y. 391, 408, 30 N. E. 109.

But it is urged that the power to sell worked an equitable conversion of the realty into personalty, and precluded the judgment from attaching as a lien upon the land. The fifth subdivision of the will reads:

"I * * * empower him, in his own discretion, at such time or times as he shall deem proper, to sell either at public or private sale, any or all of my real estate."

The power is not, in terms, imperative, but its exercise is in the discretion of the trustee. The discretion cannot be limited to the

time of sale, for the other words, "as he shall deem proper," relate to the selection of the time or times of sale. Moreover, the trustee is not directed to sell all the real estate, but "any or all." To constitute conversion, it must be the duty of the grantee of the power to sell in any event; and this duty is to be determined by the terms of the grant, or from the whole will, as where the purposes of the will require such a sale, or a legal performance of the duties enjoined upon the grantee of the power could not be otherwise had—for instance, in the present case, by a distribution of the property in specie. Chamberlain v. Taylor, 105 N. Y. 185, 11 N. E. 625.

The citation or discussion of the numerous decisions upon this subject is unnecessary. The general rules are not in doubt. Their application is a matter of judicial judgment in a given case. It is considered that in the present instance the power was given to aid the executor in case he found it necessary or helpful to exercise it. Whether the conditions would demand the execution of the power, the testator could not foresee. Hence he left the grantee of the power unconstrained. If he found that such sale was convenient or necessary to enable him to give to each person his proper share, he was authorized to make it. Matter of Tienken, at pages 391, 408, of 131 N. Y., pages 109, 112, of 30 N. E.

The remaining question relates to the validity of the Gilman assignment. The referee has found that the contract between Gilman and the bankrupt was usurious, and that Gilman is not entitled to any part of the money. But Gilman insists that, as regards this proceeding, he is in the position of a defendant against whom relief is asked for the annulment of his assignment; that he has made no application affirmatively for a delivery of a portion of the fund to him; that he has presented no claim, has offered no evidence, but that he has been brought in uninvitum, to the end that junior assignees may have his assignment annulled. He does not object to such status, and is willing to submit his assignment to the adjudication of this court, provided he may be regarded as a defendant. On the other hand, the assignees junior in time assert that Gilman does stand in the position of a person affirmatively claiming a portion of the fund, but point to no written application or pleading interposed by Gilman. Such a condition of the record illustrates the impropriety of submitting the question now at bar to a referee without order of the court, and without pleadings duly filed and exchanged. The fund was placed in the hands of the trustee, to be by him distributed "as directed by the court or courts having jurisdiction thereof." But this court in this proceeding has no jurisdiction of Gilman unless he voluntarily appears and submits to its jurisdiction, and neither the court nor the parties could demand that he should become an applicant for the funds without his consent. So far as appears, he has not applied for any portion of the fund, but has litigated the question whether his assignment is effectual to carry any portion of the fund; stating, however, that he litigates that question only as a defendant. If his assignment is usurious, he, as an applicant, is not entitled to recover any portion of the fund; but, even if it is usurious, and he stands merely in the

position of a defendant in a suit in equity brought for the purpose of annulling his assignment, the trustee and junior claimants must return to him the consideration received by the bankrupt, before there can be a decree annulling the assignment. The court has not created this situation, but finds decision embarrassed by the absence of pleadings raising a definite issue.

If this court had original jurisdiction to distribute the fund, it could direct all persons to appear and claim it; and, in such case, if Gilman failed to demand payment to him, he could be defaulted. But the court has not possession of the fund, nor is it placed in the hands of the trustee for the general purposes of the bankruptcy estate. He seems to have been selected as a depositary who shall pay out the money when a court competent to direct its payment should have done so. The referee obtained such jurisdiction as was conceded to him. He had none originally. He had no power to direct Gilman to appear and assert a claim to the fund, nor had he any power to enter his default, and distribute the fund to others in case Gilman failed to claim payment from the fund. A court that had original jurisdiction to distribute could, upon proper procedure, do this. But the referee was powerless to bring Gilman in at all, and much less to put him in the position of a claimant of the fund. Gilman filed no claim. He offered no evidence. Other claimants made it fully appear that Gilman was prima facie entitled to payment from the fund, and thereupon attempted to show that his title was avoidable for usury. Gilman was asserting nothing. He was passive. But the other claimants disclosed that the Gilman assignment must be paid or eliminated, and thereupon attempted to eliminate it. The difficulty has arisen from the referee taking cognizance of a matter over which he had no jurisdiction, without pleadings defining the status and claims of the parties. But the record is taken as it is. It does not show that Gilman has applied for the fund. It does show that other claimants have tried to annul his assignment, which affected their priority. Gilman seems to have been willing to meet that issue. The referee has decided that the assignment was tainted with usury. There is sufficient evidence to sustain the finding, and it is not the duty of this court to take up the evidence de novo. But if the referee became a court of equity, entertaining a suit to avoid the assignment as to a person who demanded nothing affirmatively, he was bound to observe the rule of equity that requires the borrower's assignee of the property pledged for the usurious loan to return whatever the borrower received. This was $1,800. The premiums paid on the policy of insurance were not received by the borrower, but were paid by the creditor at his own instance and for his own benefit, to continue policies that were pledged to him as security. Hence the $1,800 must be repaid, as a condition of avoiding the assignment.

An order pursuant to the above views will be entered.