In re LAMOREE et al.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1910.)

1. TRUSTS (§ 194*)—SALE OF REAL ESTATE TO PAY DEBTS—ORDER OF COURT FOR SALE—APPEAL.

    The court, on appeal from an order directing the sale of real estate of a trust estate, created by will, to pay debts of the estate, will not interfere with the findings of the referee appointed to take evidence and report that a note given by testator was not paid, where his findings were approved by the court below.

    [Ed. Note.—For other cases, see Trusts, Dec. Dig. § 194.*]

2. TRUSTS (§ 194*)—SALE OF REAL ESTATE TO PAY DEBTS—ORDER OF COURT FOR SALE—APPEAL.

    The court, on appeal from an order directing a sale of real estate of a trust estate, created by will, to pay debts of the estate, will not disregard the decision of the surrogate on an accounting of the executors of decedent, where the referee, on new evidence before him, approved the decision, and where the referee's decision was approved by the court below.

    [Ed. Note.—For other cases, see Trusts, Dec. Dig. § 194.*]

3. TRUSTS (§ 194*)—SALE OF LAND TO PAY DEBTS—ORDER OF COURT FOR SALE—APPEAL—REVIEW.

    Where, in proceedings to sell described real estate of a trust estate to pay debts, no claim was advanced in the court below that the money needed could be raised by mortgage or by a sale of any other tract of real estate than that described in the petition, it could not be urged, on appeal from an order directing a sale of the described real estate, that the order should have directed a mortgage rather than a sale, or that, if a sale was to be had, other property should have been sold.

    [Ed. Note.—For other cases, see Trusts, Dec. Dig. § 194.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. TRUSTS (§ 194*)—SALE OF LAND TO PAY DEBTS—ORDER OF COURT FOR SALE—
APPEAL—REVIEW.

Under the statute authorizing the court to order a sale or a mortgage
of real estate of a trust estate to pay debts, the question whether the court
shall order a sale or a mortgage is one of discretion, and, in the absence
of an abuse of discretion, its decision will not be disturbed on appeal.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 194.*]

5. TRUSTS (§ 193½*)—SALE OF LAND TO PAY DEBTS—TESTAMENTARY PROVI-
SIONS—POWER OF COURT TO ORDER SALE.

Where a testamentary trust covered the whole property of testator and
required the trustees to mortgage or sell it if they regarded it essential
under some circumstances, for the benefit of his wife, and provided that
what remained at her death should go to others, the court had power un-
der Real Property Law (Laws 1896, c. 547) § 85, authorizing the court to
order a sale of trust property to raise funds, etc., to order a sale of the
trust property to pay debts of testator.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 193½.*]

Appeal from Special Term, Cayuga County.

Application of John J. Lamoree and another, testamentary trustees
of John M. Easterly, deceased, for authority to sell or mortgage a
portion of the real estate of the trust estate. From an order directing
a sale of real estate for the payment of claims against the estate, re-
siduary legatees and claimants under the will appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

Underwood, Storke, Seward & Elder, for appellants.

James Lyon, for respondents.

WILLIAMS, J. The order should be affirmed, with costs. It
was made pursuant to the provisions of sections 85 and 87 of the
real property law (chapter 547, Laws 1896, as amended by chap-
ter 136, Laws 1897), and section 87 as amended (chapter 242,
Laws 1907). The application was upon the petition of the executors
of the estate of John M. Easterly, which was subsequently amended.
An answer was made to the petition, and the matter was referred, to
take the evidence and report with opinion. Upon the coming in of
the report, the order appealed from was made. Easterly died Novem-
ber 30, 1895, leaving a will made recently before his death. He made
his wife and one Reed and Lamoree, his brother-in-law, executors.
The will was proved in March, 1896, and the three executors qual-
ified. Reed acted until January, 1899, when he resigned. He died
in 1902. The other two executors have continued to act until the
present time. Deceased left no children or lineal descendants, but
nephews and nieces, who were residuary legatees and devisees under
his will, and who appeared and answered, and are the appellants
herein.

The estate left by the deceased included, with other property, two
groups of real estate, worth about $30,000, held by him for rental:
First. The Easterly avenue and Easterly Place property, whereon
were three double and six single tenement houses, well located and
very productive. Since deceased died, they have earned $22,322.44

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

out of ·a total rent for the entire estate of $28,870.96. Second. The North and Water street property, upon which there were four old wooden stores, centrally located, of considerable ground value, but earning little rent and requiring frequent repairs. This latter property was owned jointly by deceased and Lamoree, one-half each. The executors were by the will authorized to sell this latter property, and the other under some circumstances. The order provided for the sale of one of these houses. The general scheme of the will was to manage and care for the property and provide for the wife, during her lifetime, and at her death the property remaining to go to the nephews and nieces. . There was a debt fund provided for, with which to pay debts and mortgages and erect a monument, and this fund was made up by a $5,000 life insurance, the proceeds of the sale of two vacant lots, directed to be sold, and the general personal estate. There was also an expense fund provided for, consisting of any surplus of the debt fund, and one-half the gross rents, with which to pay all expenses of maintaining the real estate, and expenses of administration.

The claims which were the basis of the sale ordered were: (1) A note given by deceased to his wife's father, Mr. Hetzel, in 1881, which Mrs. Easterly claims to have taken as a part of her share of her father's estate, he having died in January, 1895, allowed here at $1,-364.74. (2) Advances by Mrs. Easterly in excess of the expense fund, allowed here at $1,277.92—in all $2,642.66.

First. It is claimed on this appeal that the Hetzel note was paid, instead of being turned over to Mrs. Easterly, as contended by her. On the judicial settlement of the accounts of the executors November 16, 1898, the surrogate adjudged this note a valid claim against the estate in favor of Mrs. Easterly. It was gone over again before the referee here, and evidence given on both sides, outside the decree of the surrogate made in 1898, and which it is claimed is not res adjudicata, and the referee has again determined the note to be a valid claim against the estate. I do not care to discuss this new evidence in detail. I think we should not interfere with the finding of the referee upon this subject, as approved by the court.

Second. It is claimed here that there was no deficiency in the expense fund advanced by Mrs. Easterly, amounting to $1,277.92, as contended by her.

As a result of the judicial settlement in 1898, there was left in the hands of the executors $229.31, and the monument, costing $440.40, and the Hetzel note were unpaid. The accounts from that time down are summarized in the bill of particulars served by the executor in· this proceeding. This bill shows the amount disbursed to be $23,-201.63, and the amounts received $21,923.71, leaving the balance of $1,277.92 above.

The appellants attack these accounts and go back of the accounting of 1898. I do not think we should follow them or disagree with decision of the surrogate made on that accounting. The referee has found with the executors as to this part of Mrs. Easterly's claim, upon new evidence given before him, and I see no reason to disagree with him and the court which has approved of his decision.

The court should not struggle to impose any unnecessary burden upon the widow of the deceased, for the benefit of the nephews and nieces. The will was a complicated one, and threw a burden upon the executors, not easily borne. One of the executors resigned and died. Another one resides away from the property in another county, and substantially the whole business has been thrown on the widow. She had a lot of property to handle not well constructed, expensive to keep in repair and in a habitable condition, and the court should not scrutinize her accounts too closely, so long as she appears to have been doing the best she could for the trust estate in her hands. The nephews and nieces reap all the benefits of her labor and have none of the burdens of caring for the property.

Third. It is claimed, if money must be raised to meet these claims, it should be by mortgage, or the sale of some of the store property, rather than the house property. This raises the question as to the proper exercise of the discretion of the court under the statute. The trustees set forth a description of the part of the property they desired to be sold, and the prayer of the petition was that such described piece or any other part of the house property, which the court should direct, be sold. The reasons given in the petition for a sale rather than a mortgage was that the income would be insufficient to pay the interest on such a mortgage in addition to the other necessary expenses. I do not find that any reasons were stated in the petition why a sale of a part of the house property, rather than the store property, was desired to be made. Nothing appears in the report of the referee on this subject, and I find nothing in the evidence or proceedings before the referee on this subject. I assume therefore that no claim was advanced before the referee or the court that the money required should be raised by mortgage or the sale of any other piece of property than that the petition asked for, and the court directed to be sold. The only way in which the order itself refers to the question, if that may be so construed, is the statement in a general way that it was for the best interests of the estate that this property be sold. I do not find that any questions as to Mrs. Easterly's motive in asking for the sale of this particular property were put to her, or that it appears in any way, or that it appears in any way except by inference of counsel, that she desired to purchase the property. I think it too late now, and that there is no basis for claiming that the order should have directed a mortgage rather than a sale, or that, if a sale was to be had, it should have been of the store rather than the house property. At most, these questions were matters of discretion, and it nowhere appears there was an abuse of such discretion by the court. The statute authorizes the court to make an order of sale or mortgage whenever it appears to its satisfaction, for any reason or circumstances, it is for the best interests of the estate to do so.

Fourth. The appellants claim there is no power under the statute to sell their estate as remaindermen in the property, and reliance is placed upon Losey v. Stanley, 147 N. Y. 560, 42 N. E. 8. That case was decided under section 65 of the statute of uses and trusts (Rev. St. [1st Ed.] pt. 2, c. 1, tit. 2), as amended by chapter 257, Laws

1886, and which was repealed by the real property law in 1896. Sections 85 and 87 of the latter law were enacted in place of section 65 of the former law. The first parts of the two sections are as follows:

| Section 65. | Section 85. |
| --- | --- |
| (Where) the trust is (or shall be) expressed in the instrument creating the estate, every sale, conveyance or other act of the trustees, in contravention of the trust, shall be absolutely void. | (If) the trust is expressed in the instrument creating the estate, every sale, conveyance or other act of the trustees, in contravention of trust (except as provided in this section) shall be absolutely void. |

Changes are indicated by (　　).

Both sections then provide that the court may authorize the mortgage or sale of the property or part thereof when necessary for the best interests of the estate. The language is not precisely the same, but that is not material here.

In Lozey v. Stanley, above, the deceased by will gave the real property to Briggs, trustee, to manage, and, if he thought best, to sell, and keep proceeds safely invested and pay net income over quarterly to her son, and, after the son's death, gave the property to his (the son's) children. The trustee died, and the son was himself appointed the trustee. He applied by petition, under section 65 above, for leave to mortgage or sell the property to raise $3,500, which he stated would in his opinion be for the best interests of the estate and was necessary for the purpose of preserving and improving the estate. He gave good reasons for his opinion, stating facts in detail. The order was made, the property mortgaged, and the money received by the trustee; no evidence was taken by the court or a referee. The will was not produced on the hearing, and the court was not apprised of its contents. The order was apparently made in reliance upon the petition alone. No part of the money was used for the benefit of the estate. Later an action was brought to foreclose the mortgage. The plaintiff succeeded at Trial Term and in the General Term, but the Court of Appeals reversed, holding that the children of the son, when they were born, became vested with estates in remainder, that the estate of the trustee was for the life of the son only, terminable at his death, that the trustee had no power over the estates in remainder, and could not sell or incumber them in any way, that Statute of Uses and Trusts, § 60 (section 80, Real Property Law, practically the same), declaring that every valid express trust should vest the whole estate in the trustees, was limited to the trust estate, and had no application to future legal estates in lands covered by the trust, to take effect in possession on the termination of the trust, that it was only the life estate that vested in the trustee in that case, that the will gave the trustee the power of sale only for the purpose of investing the proceeds, and he had no right to sell or incumber the estate for any other purpose, that the mortgage was void, not because under the statute it was in contravention of the trust, but because the estate in remainder was outside of the trust, not a part of it, and, if the statute had assumed to give the trustee power to mortgage or sell such estate, it would have been unconstitutional. See Powers & Wyckoff v. Bergen, 6 N. Y. 358, and Brevoort v. Grace, 53 N. Y. 245.

125 N.Y.S.—64

That case has been frequently cited by the Court of Appeals with approval, and must be regarded as the law of the state, and controlling so far as applicable in this case. The two sections 65 and 85 are practically alike so far as the question we are considering is concerned.

The only question here is whether the order made can be upheld without disregarding the principles of law there laid down. The court was dealing with a pure life estate, and subsequent remainders, and the trust estate was held to be confined to the life estate, and not to cover the estate in remainder. The estates in remainder were vested during the life estate of the son as soon as the children were born. They never vested in the trustee or became a part of the trust estate.

Here under the will the trustees are given power under some circumstances to sell all the real property, and the fund as well as the income therefrom is made applicable to the payment of deficiency in debts, expenses, repairs, etc. (subdivisions 5, 6, 7, 8, 9), and then by subdivision 10 it was provided:

"After the death of my wife the remainder of my estate, both real and personal, of which, I may die seised, which has not been sold by my executors, under the powers given herein, and the proceeds of any property sold shall be disposed of as follows"—to nephews and nieces, appellants herein.

Under this will the estate given to the trustees was not a mere life estate (of the wife) with remainder to the nephews and nieces. The estate of the nephews and nieces did not vest at the death of the deceased nor until the death of the wife. The trust covered the whole property, and required the trustees to manage it, improve it, sell it if they regarded it essential, under some circumstances, and only what remained at the death of the wife of all his property, and the real estate and personal, including proceeds of the real property sold, should be disposed of as provided in the tenth clause.

It seems to me we are not compelled by the case above cited to hold this order was void or improperly made, that it should be held here that the whole property was covered by the trust, the whole estate therein remained in the trustees, during the life of the wife, and the remainder only vested in the nephews and nieces upon the death of the wife.

This being so, the court had clearly power to make the order. I conclude the making of the order was a wise exercise of its power and discretion, and should be affirmed. All concur.